Ckabb, J.
delivered the unanimous opinion of the Court. It is argued on the part of the plaintiff in error that the appointment of Lowry, at the December sessions, “ clerk pro tem.” to fill said vacancy until the next sessions of said' [290] court, made him clerk of the Court during good behavior; that the Court was merely empowered by the Constitution to nominate its clerk, who immediately held his office under the Constitution, by the tenure prescribed in it, and that they could not create a different tenure; that the office was full, and the appointment of "Turk at a subsequent term was illegal and a nullity, and that consequently the latter had no warrant or title to the office.
The correctness or incorrectness of these propositions mainly depends *603 upon the proper view to be taken of the Constitution of this State, art. 5, § 10, and the Act of Assembly of 1796 (fall session), ch. 3.
The Constitution says that “ each court shall appoint its own clerk, who may bold his office during good behavior.” The act passed a few months after the adoption of the Constitution provides “ that where any vacancy may happen by death, resignation, or otherwise, the right of which appointment is by the Constitution vested in the County Court, then, and in that case such, court shall hold an open and free election on the second day of the term in which such appointment is to be made, admitting all citizens to the privilege of offering as candidates, except such as are prohibited by the Constitution, or some of the existing laws of the State.
“ That it shall be the duty of the chairman of any of the aforesaid courts, or any other justice acting in his place, to cause public notice in writing to be set upon the door of the court-house, upon the first day of the term in which said election is to be held, signifying and setting forth under his hand which of the offices is vacant, and the time prescribed by this Act for filling the same,” &c.
It is alleged the Constitution must speak for itself in relation to the appointment of a clerk, and that this legislative provision, so far as it seeks to prescribe the time and the mode of appointment, and the notice necessary to be given, conflicts with the Constitution, and is therefore void. ■ The fallacy of this argument will be apparent upon a moment’s ■ consideration. A constitution, or fundamental law, from its very nature, is brief in its provisions, and confined to the [291] annunciation of first principles. It tells us that an act is to be done, or a result produced, but often pretends not to particularize the time or manner. The latter power is necessarily left to the legislative department, under the high responsibilities which impel and restrain it in all its operations.
It is believed that the General Assembly have an unquestionable right to supply the mode of executing, a power, or a duty devolved- by the Constitution in general terms on any citizen or body of citizens in the community ; provided that mode do not come in collision with any of the injunctions of the Constitution, and is consistent with all its principles.
The convention, when framing the Constitution, could not anticipate with certainty what would be the character and composition of some of the courts that the Legislature, “ art. 5, § 1, should from time to time direct and establish.” Well might they, therefore, leave the mode of appointment to be prescribed by the same department of the government to whom they intrusted the more important power of establishing the Court itself. The General Assembly thus possessed of the power desire so to act in relation to the County Court, composed as it is of numerous members scattered over the whole county, as to afford every justice an opportunity of speaking, and to every citizen the “ privilege of offering as a candidate,” in *604 the selection of all officers, the right of whose appointment is, by the Constitution, vested in the county courts.
The latter instrument had not ascertained the mode of appointment. It might (independent of legislative interposition), be made by whatever. court should happen to be on the bench when the vacancy should first occur, if the bare number competent to the transaction of ordinary business should be present. But as the appointment of these officers is a matter of importance, and one in which the whole county is interested, the General Assembly considered it advisable to impart to it the character of an “ election”; and conforming it to the Bill of Rights, § 5, it is required to be a free and open election. To promote this result, [292] notice in writing is to be given, and the election is to take place on a named day of the term.
The object of the Constitution is that a good selection shall be made, and to this end, that the Court shall make it. The act in unison with the Constitution, and with a view to the same object, seeks to have the benefit of thé whole court, or as many members as possible, in making the appoint'ment, and aims at certainly secui’ing the services of one that is qualified, by affording a general opportunity for application. Do the Legislature act unreasonably in all this, or do they violate the words or spirit of the Constitution ? It is believed they do neither. What, then, did the County Court of M’Minn ? The clerk died on the first day of the term, and on the second the Court were informed of the fact. They could not comply with the act of Assembly, and make an appointment at that term. They must either, then, disregard a law which it was their duty to obey, or they must defer filling the vacancy until the next term. In compliance with their consequent duty, they do defer it; and at the succeeding term they conform to the requisitions of the law, and elect Turk. And yet we are told he is not entitled to the office. He was unquestionably entitled unless in the mean time some other person had acquired a prior right; and we are of opinion that Lowry had not. He was appointed clerk pro.tem. to fill the vacancy until the next session. We are asked to say that the Court, contrary to their own and his understanding, made him clerk during good behavior, although they had determined already to defer the election until the succeeding sessions, in obedience to an act of Assembly made in pursuance of the Constitution, and although none of the requisites of the Act had been complied with in relation to Lowry’s appointment. The clerk dies on one day; the appointment is made the next. Ho notice is given, by means of which any citizen who may be considered qualified may have his pretensions presented, or that the justices may generally attend. Even those who happen to be present do not consider themselves as engaged in the election of a clerk. It cannot be that such an appointment [293] is effectual, as against the claims of a person regularly elected at the proper *605 time. We go no further. We confine our opinion to the peculiar circumstances of the case before us. We need not remark upon the case of Stonestreet v. Harrison, decided by the Court of Appeals of Kentucky, because we do not consider it applicable to the case under consideration. Were it so, it would be regarded by us with much attention; for we entertain a high respect for the learning and independence of that tribunal.
We are also of opinion, after a careful consideration of the arguments, and the numerous authorities produced at the bar, that the mode of proceeding, sought to be used in this case, is not sanctioned by the laws of this State. The old writ of quo warranto had fallen into disuse in England, prior to the passage of the North Carolina Act of 1715, ch. 31, § 6, adopting the English common law. Neither that writ nor an information in the nature of it, is known by us to have ever been used in the colony of North Carolina, and was not, therefore, incorporated into our code by the Act of 1778, ch. 5, § 2, which did not adopt such parts of the common law as had not been in force and in use in the colony, or were inconsistent with, the new form of government, or which had been abrogated, repealed, expired, or become obsolete.
It is hot known to us that either the writ or the information has ever been used in the courts of North Carolina or this State since the Revolution. It is probable that the general provision in the Bill of Rights of North Carolina, § 8, and of Tennessee, § 14, much more general than are found in the Constitutions of New York and Massachusetts, have contributed to prevent the introduction of this proceeding into the courts of the two former States.
There was a well-founded aversion among the lovers of liberty, in England and America,' to the proceeding by information, on account of the oppressive purposes to which it was frequently applied; and although it is properly said at the bar that in substance it is principally a civil proceeding in such a case as this, yet, even in such a case, it is in form a criminal proceeding, and may be followed by [294] one of the usual consequences of such a proceeding, — a fine to the State, in addition to the judgment of ouster. Besides, the illegal usurpation of an office is probably a misdemeanor, the subject of a criminal charge, for which an indictment or presentment would lie. But upon this point no positive opinion is given. Let the judgment of the Circuit Court be affirmed.
Judgment affirmed.